# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

TODD A. DYER,

                Petitioner,

v.

UNITED STATES OF AMERICA,

                Respondent.

Case No. 19-CV-1694-JPS

**ORDER**

### 1.    BACKGROUND

On November 18, 2019, Todd Dyer ("Dyer"), a federal prisoner, filed this motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, asserting that his conviction and sentence were imposed in violation of his constitutional rights. (Docket #1). On December 16, 2019—not even a month after the motion had been filed—Dyer filed a motion to expedite the proceedings. (Docket #3). On January 21, 2020, Dyer filed a motion to supplement his brief with an exhibit which purports to show his attempt to raise a procedural issue with his attorney—thereby buttressing his ineffective assistance of counsel claim, which will be discussed below. (Docket #4). In that motion, Dyer also sought expedition of his petition given the "potential of prejudice to both parties given the delay." *Id.* at 1. Less than two months later, Dyer submitted a mandamus petition with the Seventh Circuit seeking action in this proceeding.

Dyer first came before this Court in 2015, and he was ultimately charged in a twenty-four count superseding indictment for wire fraud, unlawful financial transactions, and conspiracy. Case No. 15-CR-115, (Docket #137).[1]

---

[1] Hereafter, all docket references are to case number 15-CR-115 unless otherwise stated.

This scheme—known as "the Farmland case"—involved procuring funds from unwitting investors by promising to invest the funds in farmland and other agribusinesses, ostensibly providing a return of as much as 6% interest annually.² The scheme was sophisticated and involved a promised initial public offering, the sale of stock warrants, and multiple names for the various purported entities. Dyer, however, never actually invested any of the funds on anybody's behalf. Instead, he kept hundreds of thousands of dishonestly obtained dollars for himself.

During the early parts of his criminal proceedings before Judge Stadtmueller, Dyer repeatedly saw himself as an exception to the rules. For example, he made multiple requests—often *pro se* or through a friend, even when he was represented by counsel—to travel. *See e.g.*, (Docket #76, #78, #80, #99, #206). Many of these motions sought permission to travel to Palm Desert, California, where Dyer continued to pursue his business interests. *See* (Docket #76, #78, #80, #206). One early request was denied, in part because one of the conditions of Dyer's bond was that he abstain from soliciting new clients and handling investments. (Docket #85 at 2–3). It was also noted that Dyer had repeatedly attempted to contact and intimidate members of one of his victims' families, in violation of a no-contact order. *Id.* at 3. Indeed, Dyer continued to harass his victims and their families well after he was sentenced. *See e.g.*, (Docket #292).

Dyer's first attorney withdrew early-on and he received standby counsel. (Docket #86, #91). He eventually fired standby counsel, but then rehired different standby counsel for trial. (Docket #108, #178). In late November 2016, just weeks before his jury trial, Dyer filed two motions to

---

²During this time, Dyer was also indicted on fraud charges in this district in case numbers 16-CR-100 and 15-CR-137, which were before Judge Pepper and Judge Adelman, respectively.

dismiss and a 193-page motion to adjourn, in which he claimed that he did not have adequate time to prepare for trial. (Docket #171, #172, #180). In denying these motions, the Court noted that "although Dyer laments that he has inadequate time to prepare for trial, he has simultaneously made time to file two motions to dismiss the superseding indictment." (Docket #182 at 5).

On December 5, 2016, Dyer's criminal trial began before a jury. He represented himself *pro se*, with the benefit of stand-by counsel. At the end of the second day of trial—after eleven adverse witnesses had testified—Dyer had a change of heart. He agreed to enter into a global plea agreement as to all three of his fraud cases in the Eastern District of Wisconsin. *See* (Docket #198). The following day, Dyer pleaded guilty to two charges in 15-CR-115 and two charges in 16-CR-100. In exchange, the remaining charges in the indictments of 15-CR-115 and 16-CR-100—a total of thirty-three counts—were to be dismissed. *Id.* at 1, 3, 11; Case No. 16-CR-100 (Docket #30 at 1, 3, 12). Additionally, the entirety of case number 15-CR-137 was dismissed. (Docket #198 at 11). A Rule 11 plea colloquy was conducted that same day, at which Dyer was satisfactorily cautioned and examined under oath by Magistrate Judge David E. Jones.

After the hearing, Magistrate Judge Jones drafted a report and recommendation ("R&R") to this Court recommending that the plea should be accepted. (Docket #202). The Court adopted the R&R five days later, on December 12, 2016. (Docket #205). That same day, Dyer filed another motion to travel to Palm Desert, California, which was granted at a hearing before Magistrate Judge Nancy Joseph on December 23, 2016. (Docket #211). At no point in the two-week period following the plea colloquy—in his motion to the Court or at the travel hearing before the magistrate judge—did Dyer express any concern with the district court's early acceptance of his plea.

On March 1, 2017, the United States Office of Probation issued a pre-sentence report regarding Dyer. (Docket #216). On March 7, 2017—the day before his sentencing hearing—Dyer filed a 199-page motion to withdraw his plea on the grounds that he was actually innocent and the government had lied in bringing charges against him. (Docket #221). He followed this with two frenzied motions for formal charges against the witnesses and disciplinary action against the Assistant United States Attorneys who prosecuted the charges against him. (Docket #222, #224). At the sentencing hearing the next day, the Court denied Dyer's motion to withdraw the plea because it was meritless. (Docket #229). Dyer was sentenced to a total of 180 months of incarceration with a three-year term of supervised release to follow, and $1,802,482.00 in restitution. *Id.*

Dyer appealed his sentence on the grounds that the district court should have granted his motion to withdraw his pleas because the magistrate judge's plea colloquy was insufficient. *United States v. Dyer*, 892 F.3d 910, 913–14 (7th Cir. 2018). Specifically, Dyer contended that the magistrate judge erred in failing to inquire into Dyer's mental status in light of his bipolar disorder, that the magistrate judge inappropriately accepted Dyer's one-word answers during the colloquy, and that Dyer's dramatic decision to change his mind and plead guilty required a more probing colloquy.

The Seventh Circuit reviewed the record of the plea colloquy and found that it was appropriately conducted. The Seventh Circuit held that the magistrate judge "thoroughly assessed Dyer's ability to understand his rights," and there was no evidence that Dyer's judgment was significantly impaired during the plea negotiations and subsequent colloquy. *Id.* at 914. The Seventh Circuit found that the magistrate judge's colloquy conformed to Federal Rule of Criminal Procedure 11's requirements, which do not require judges to elicit narrative answers. *Id.* at 914–15. Finally, the Seventh Circuit held that Dyer's

"sudden change of heart is no anomaly" and "there was no reason for the district court or the magistrate to find that phenomenon unusual in this case." *Id.* at 915.

**2.    SCREENING**

Against that backdrop, the Court now turns to screening Dyer's motion pursuant to Rule 4 of the Rules Governing Section 2255 Cases in the United States District Courts. That Rule authorizes a district court to conduct an initial screening of a Section 2255 motion and to dismiss any grounds summarily where "it plainly appears from the face of the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." Upon an initial Rule 4 review, the Court will analyze whether the movant has complied with the statute of limitations, avoided procedural default, and set forth cognizable claims.

**2.1    Timeliness**

The Court begins its Rule 4 review by examining the timeliness of Dyer's petition. Section 2255(f) provides a one-year limitations period for filing a motion under Section 2255. That limitations period runs from the date on which the judgment of conviction becomes final. 28 U.S.C. § 2255(f). "[T]he Supreme Court has held that in the context of postconviction relief, finality attaches when the Supreme Court 'affirms a conviction on the merits on direct review or denies a petition for a writ of *certiorari*, or when the time for filing a certiorari petition expires.'" *Robinson v. United States*, 416 F.3d 645, 647 (7th Cir. 2005) (quoting *Clay v. United States*, 537 U.S. 522, 527 (2003)). The time for filing a certiorari petition expires "90 days after entry of the judgment" of the United States Court of Appeals. Sup. Ct. R. 13.1. The Seventh Circuit denied rehearing on Dyer's petition on August 23, 2018. *See Dyer*, 892 F.3d at 910. Thus, his judgment became final on November 21, 2018. Dyer filed the petition in this Court on November 18, 2019. Accordingly, the motion appears to be timely.

### 2.2 Procedural Default

The Court turns next to procedural default. Section 2255 relief is appropriate if the Court determines that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). However, this form of action is not a substitute for a direct appeal. *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007). Therefore, any claims that Dyer did not raise at trial or on direct appeal are procedurally defaulted and he cannot raise them here. *Torzala v. United States*, 545 F.3d 517, 522 (7th Cir. 2008).

There are two exceptions to this rule. First, claims of ineffective assistance of counsel may be raised for the first time in a 28 U.S.C. § 2255 motion. *Massaro v. United States*, 538 U.S. 500, 504 (2003). Second, Dyer may raise claims that he otherwise procedurally defaulted if he demonstrates that there was cause for his failure to raise a claim earlier and that the failure has actually prejudiced him. *Torzala*, 545 F.3d at 522 (citing *Bousley v. United States*, 523 U.S. 614, 621, 622 (1998)). Dyer's claim falls into the former category.

The basis of Dyer's habeas petition is that he was "denied the effective assistance of Appellate Counsel for failing to raise obvious and significant issues on the face of the record." Case No. 19-CV-1694, (Docket #1 at 4). Specifically, Dyer wanted his appellate counsel to challenge the fact that the district court prematurely adopted Magistrate Judge Jones's R&R regarding the plea colloquy. *Id.* Dyer claims that this deprived him of both "procedural due process afforded by 28 U.S.C. § 636(b)(1) and the structural guarantees of Article III of the United States Constitution to de novo review." *Id.* Dyer claims that he raised this issue with his appellate counsel, but the issue itself was never raised on appeal. Because claims of ineffective assistance of counsel may

be raised for the first time in a 28 U.S.C. § 2255 motion, this claim is not procedurally defaulted. *Massaro*, 538 U.S. at 504.

### 2.3 Cognizable

Having determined that Dyer's claims do not fail on the statute of limitations or procedural default, the Court will finally consider whether the claims are cognizable and non-frivolous, in order to excise any plainly meritless claims. "If it plainly appears from the motion, any attached exhibits, and the record of the prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party." Rule 4(b), Rules Governing § 2255 Proceedings. When Dyer's petition is considered in light of the record of the prior proceedings, it is obvious that his ineffective assistance of counsel claim is frivolous and without merit.

Under the familiar test announced in *Strickland v. Washington* for a Sixth Amendment ineffective assistance claim, a petitioner must show that his "counsel's representation 'fell below an objective standard of reasonableness' and that he was prejudiced as a result." *Lee v. United States*, 137 S. Ct. 1958, 1964 (2017) (citing *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984)). In the first step, the court asks "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. The assessment of prejudice centers on whether there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Thus, a claim of ineffective assistance requires a showing of both deficient performance by counsel and resulting prejudice to the defendant. *Perrone v. United States*, 889 F.3d 898, 908 (7th Cir. 2018). An ineffective assistance analysis under *Strickland* may begin on either prong—if there is no

showing of prejudice, there is no need to assess whether the attorney acted reasonably. *Strickland*, 466 U.S. at 697.

Dyer claims that his appellate counsel's failure to raise the premature R&R adoption argument violated his "procedural due process afforded by 28 U.S.C. § 636(b)(1)[.]" Case No. 19-CV-1694 (Docket #1 at 4). Indeed, 28 U.S.C. § 636(b)(1) provides that within fourteen days of a magistrate's R&R, any party may serve written objections regarding the order, and the judge must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."

However, the district court judge also has considerable discretion to adopt, reject, or modify any portion of the magistrate's R&R, whether it has been objected to or not. *Thomas v. Arn*, 474 U.S. 140, 154 (1985). Additionally, "[a]lthough a district court should not adopt the magistrate judge's findings and recommendations before such timely objections are filed and considered, premature adoption does not automatically constitute reversible error; it is harmless unless the appellant can show prejudice." 13 Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 3505 (3d ed.).

Accordingly, the central questions to this habeas petition are whether Dyer was prejudiced—on the first level, by the Court's failure to give a full 14 days to object to the R&R; on the second level, by Dyer's appellate counsel's failure to raise this issue before the Seventh Circuit. Prejudice on the premature R&R adoption issue requires, at minimum, a credible allegation that Dyer actually intended to object to the report and recommendation, and was unable to because of the Court's action. *See id.* Prejudice under *Strickland* further requires a credible allegation that counsel's failure to raise this argument changed the outcome of the proceedings. Logically, if Dyer was not prejudiced by the Court's premature adoption of the R&R, then there would have been no

reason for Dyer's appellate counsel to raise the issue on appeal—thereby negating any liability for ineffective assistance of counsel under *Strickland*.

Here, the docket betrays any possibility that Dyer intended to object to the magistrate's R&R. Make no mistake, Dyer is a prolific litigant who files *pro se* motions when represented, who quibbles with the hardest of evidence, and who contorts even the most basic of facts into the foundation of another fantasy in which he is both a victim and a champion. (He suggested at trial, for example, that his criminal charges arose because the government simply did not understand his investment scheme. *See Dyer*, 892 F.3d at 912.) Thus, in the month that followed the Court's premature adoption of the R&R, one might have expected Dyer to file his objections anyway—or perhaps file a complaint that he was not afforded enough time to file objections, or perhaps raise this issue in the hundreds of pages that he later filed in an attempt to withdraw his plea.

Instead, in the weeks following his plea colloquy, Dyer secured a trip to Palm Desert, California. (Docket #206, #211). In the early months of 2017, the docket was quiet; Dyer did not submit a single motion or letter to the Court. It was not until a week *after* disclosure of the pre-sentence report, (Docket #216), that Dyer revealed any qualms with his plea. On March 7—three months after his plea colloquy—he unleashed nearly a thousand pages of all but incoherent arguments in an attempt to withdraw his plea and harass individuals involved in his case. (Docket #221, #222, #224). In fact, it appears that the first time Dyer raised the issue of the premature R&R adoption before the Court was *after* the Seventh Circuit noted the procedural hiccup in a footnote. But the mere fact that Dyer was not afforded the full amount of time to object is of no consequence unless he actually intended to object within that timeframe, and there is absolutely no credible suggestion that he intended to do just that.

In *McGill v. Goff*, the Fifth Circuit held that where a district court judge prematurely adopted a magistrate's report and recommendation and the adversely affected party had "ample opportunity before the court's judgment became final to bring this error to the court's attention," but failed to do so, they "waived the right to complain on appeal of any error associated with the district court's adoption procedure." 17 F.3d 729, 732 (5th Cir. 1994) (overruled on other grounds in *Kansa Reinsurance Co., Ltd. v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1373 (5th Cir. 1994)). Here, Dyer had nearly four months before his sentencing hearing to object to this error, or otherwise bring it to the Court's attention, and he failed to do. Under *McGill*, he waived the right to use this as a basis for his appeal—to say nothing of his right to stake his habeas claim for ineffective assistance of counsel on it.

Relatedly, the Eighth Circuit has observed that simply because a district court adopts an R&R prematurely does not mean that the district court failed to conduct its own de novo review. *Sumlin v. United States*, 46 F.3d 48, 49 (8th Cir. 1995). Indeed, when the Court adopted Dyer's plea on December 12, 2016 it did so with full knowledge of the terms of the plea agreement, the background of the case, and the thorough manner in which Magistrate Judge Jones conducted his plea colloquies. Moreover, the Court had occasion to address Dyer in open court in the days immediately preceding the plea colloquy, and was familiar with his personality, his intelligence, and his ability to weigh the pros and cons of his plea agreement. The Court's decision to adopt the R&R, while procedurally early, was nevertheless based on a reasoned assessment of the defendant and the agreement. It is not grounds for a new trial.

A review of the change of plea colloquy transcripts confirms that any plausible objections that might have been raised would have been meritless. A valid guilty plea must be made voluntarily, intelligently, and knowingly. *Brady*

*v. United States*, 397 U.S. 742, 747 (1970). A plea is voluntary when it is not induced by threats or misrepresentations, and the defendant is made aware of the direct consequences of the plea. *United States v. Jordan*, 870 F.2d 1310, 1317 (7th Cir. 1989). A plea is knowing and intelligent when the defendant is competent, aware of the charges, and advised by competent counsel. *Id.* The focus of any challenge to the colloquy would have been on whether Dyer's plea was voluntary when it was entered, not whether he rethought the wisdom of the plea upon reading the presentence report. *See United States v. Underwood*, 174 F.3d 850, 854 (7th Cir. 1999). Moreover, "a guilty plea is no less voluntary just because the defendant becomes disgruntled about the outcome at sentencing." *United States v. Arroyo*, 219 F. App'x 516, 519 (7th Cir. 2007).

At the hearing, Magistrate Judge Jones and Dyer discussed the plea agreement, the elements and consequences of each charge, and whether Dyer's decision to be bound was knowing and voluntary. *See* (Docket #259). During the plea agreement process and subsequent colloquy, Dyer was represented by competent standby counsel, with whom Dyer had consulted "extensively" regarding the plea agreement. *Id.* at 7. When asked if his standby counsel was responsive to his questions, Dyer responded, "very much so." *Id.* Dyer affirmed that he understood the plea agreement, and that he was soberly and voluntarily entering the plea. *Id.* at 6, 9. Magistrate Judge Jones proceeded to address each plea agreement individually, so there was never any uncertainty as to the fact that Dyer was resolving his liability in two criminal cases. *See e.g.*, *id.* at 9. Dyer acknowledged that the government would be able to prove, beyond a reasonable doubt, the facts underlying the elements in every single charge to which he pleaded guilty. *Id.* at 13–19. Further, Dyer acknowledged that he believed the government could prove those facts as true. *Id.* Dyer acknowledged the maximum penalties that he could receive by pleading guilty. *Id.* at 20–22. Dyer understood that he could be liable for restitution in

both cases. *Id.* at 22. He then, under oath, pleaded guilty—unhesitatingly and unequivocally. *Id.* at 23. All of these sworn statements by Dyer are presumed truthful, and Dyer has offered no reason to doubt the veracity of these earlier statements. *Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000). Moreover, in evaluating Dyer's plea colloquy, the Seventh Circuit found that it was appropriately conducted and affirmed the judgment against him. *Dyer*, 892 F.3d at 913–15.

These facts demonstrate that Dyer's instant habeas petition is wholly without merit. Not only is there no sign that Dyer intended to object to his plea colloquy R&R, but the record demonstrates that any objections to the colloquy would have been unmeritorious had they been raised for consideration. Thus, Dyer's appellate counsel did not prejudice him in failing to raise the issue of the prematurely adopted R&R on appeal because this procedural hitch did not affect the outcome of Dyer's case. For these reasons, the case is devoid of grounds for habeas relief on the basis of ineffective assistance of counsel. To proceed—even briefly—as if this were a meritorious claim would be nothing short of an insult to the judiciary, and an utter waste of time. Indeed, the observations made by the Court at the outset of Dyer's sentencing hearing capture the essence of his persona in unmistakable terms:

> THE COURT: You know, at the end of the day, Mr. Dyer, there's an age-old proverb that comes to mind. And that is you can fool all of the people some of the time, and you can fool some of the people all of the time, but you cannot fool all of the people all of the time. And when it comes to fooling individuals, Judge Stadtmueller is the last person in the world that you're going to get away with fooling, like you did each of the numerous victims of the conduct that underlies this case. It's unconscionable. Particularly against the backdrop of your record in business and your record of the criminal case that underlies the conviction before one of my colleagues, Judge Rudolph Randa.

> This case has been pending, as you know, since early 2012. A search warrant was executed at your residence in July of 2012. This case has been investigated for a period of over three years. When it came to court you used every trick in the book by way of prevarication, and it isn't going to result in anything other than an appropriate, fair, just, and reasonable sentence.
>
> You know, you exercised your Constitutional right to go to trial. And we picked a jury back on December 5th. As I recall, 11 witnesses testified. Nine of whom were victims. And they recounted to that jury in intimate detail all of the cunning and guile that you brought to fleece them out of their retirement funds or their investment funds. And as a result, your stand-by counsel, as well as yourself, engaged in a final effort not only to resolve this case, but the other matters pending in other branches of the Court in this District. That culminated in a 21-page written document that you signed, acknowledged having read it and being familiar not only with the content of the document, but what the Government was prepared to prove, had this case continued.
>
> And so, when you come before this Court, as you did yesterday, to suggest that somehow, some way you were duped, it's beyond the pale in terms of being ludicrous and downright foolhardy. And you're not going to convince this Judge otherwise. Frankly, you wouldn't know the truth if it struck you side of the head with a baseball bat. Indeed, if you were set out to do it, you could probably find yourself in the Guinness book of world records having sold wristwatches to fish.

(Docket # 242 at 3–5).

Under Rule 11(a) of the Rules Governing Section 2254 Cases, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), Dyer must make a "substantial showing of the denial of a constitutional right" by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to

Page 13 of 15
Case 2:19-cv-01694-JPS   Filed 04/28/20   Page 13 of 15   Document 6

deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal citations omitted). As the Court's discussion above makes clear, no reasonable jurists could debate whether Dyer's claim has merit. As a consequence, the Court is compelled to deny him a certificate of appealability.

Finally, the Court closes with some information about the actions that Dyer may take if he wishes to challenge the Court's resolution of this case. This order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within 30 days of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See id*. A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Accordingly

**IT IS ORDERED** that Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, Case No. 19-CV-1964 (Docket #1), be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Petitioner's motion for leave to supplement additional exhibit of material fact, Case No. 19-CV-1964 (Docket #4), be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Petitioner's motion to expedite, Case No. 19-CV-1964 (Docket #3), be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that a certificate of appealability as to Petitioner's petition be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 28th day of April, 2020

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge